LONGYEAR, O'DEA & LAVRA, LLP
Gregory P. O'Dea, CSB No. 110966
3620 American River Drive, Suite 230
Sacramento, CA 95864
Phone: 916-974-8500
Facsimile: 916-974-8510

Attorneys for Plaintiff, County of Sacramento

## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| COUNTY OF SACRAMENTO ) | Case No: |
| ) | |
| Plaintiff, ) | **COMPLAINT FOR BREACH OF CONTRACT,** |
| v. ) | **BREACH OF THE IMPLIED COVENANT OF** |
| ) | **GOOD FAITH AND FAIR DEALING AND** |
| EVEREST NATIONAL INSURANCE CO., ) | **DECLARATORY RELIEF** |
| ) | |
| Defendant. ) | **JURY TRIAL DEMANDED** |
| _____ ) | |
| ) | |
| ) | |
| ) | |

The County of Sacramento ("County"), by and through its counsel, hereby brings this Complaint against Defendant, Everest National Insurance Company ("Everest") and alleges as follows:

### NATURE OF THE ACTION

1.      This is a civil action for breach of contract, breach of the implied covenant of good faith and fair dealing and for declaratory relief arising from the failure of the defendant Everest to satisfy its contractual obligation to indemnify the County for that portion of a settlement falling within the limit of coverage of Everest's insurance policies issued to the County.

/ / /

/ / /

/ / /

**THE PARTIES**

2.      Plaintiff County is a political subdivision of the State of California, located within the County of Sacramento, State of California.

3.      Defendant Everest is a Delaware Corporation with its principal place of business in New Jersey.

**JURISDICTION AND VENUE**

4.      This Court has jurisdiction over this action under 28 U.S.C. §1332, because there is complete diversity of citizenship between the parties and the amount in controversy exceeds $150,000.00, exclusive of interest and costs.

5.      Venue is proper in the Eastern District of California under 28 U.S.C. §1391 in that a substantial part of the events giving rise to this action occurred in this district.

**THE UNDERLYING LAWSUIT**

6.      On November 12, 2010, plaintiffs Annica Hagadorn, Tracie Keillor, Jodie Mendonca and Dawn Douglas filed a complaint in the Superior Court of California against the County of Sacramento captioned *Annica Hagadorn, Tracie Keillor, Jodie Mendonca and Dawn Douglas v. County of Sacramento, et al.,* Superior Court of the State of California, County of Sacramento, Case No. 34-2010-00091514 (the "Underlying Lawsuit").   Plaintiffs amended their complaint on February 4, 2014.

7.      In the Underlying Lawsuit, the plaintiffs asserted claims arising out of their employment as sworn officers in the Sacramento County Sheriff's Department.

8.      Plaintiffs asserted that the Sheriff's Department was biased against women, resulting in harassment, discrimination and retaliation for reporting harassment and discrimination.

9.      On or about February 11, 2016, the Court granted in part and denied in part the County's Motions for Summary Judgment/Summary Adjudication such that the case proceeded to trial on behalf of all plaintiffs on a statutory retaliation claim under the Fair Housing and Employment Act.

10.     The retaliation claim was tried to a jury from March 28, 2016, to May 17, 2016.   The retaliation claim had two bases as follows:

/ / /

/ / /

a.      Plaintiff Hagadorn alleged retaliation because she was subject to two internal affairs investigations, was reassigned as a result of one of the investigations and denied assignments that she wanted in retaliation for filing complaints with the Department of Fair Employment and Housing.

b.      Plaintiffs Douglas, Keillor and Mendonca claimed retaliation by being moved out of their positions at the main jail because they complained that they believed then Captain Erik Maness was having an affair with Deputy Kristyn Beezley.

11.     The jury issued the following verdicts:

Douglas

| Lost past earnings: | $    67,473 |
| Emotional distress: | $  120,000 |

Keillor

| Lost past earnings: | $  306,591 |
| Lost future earnings: | $1,416,449 |
| Emotional distress: | $1,000,000 |
| Physical pain and suffering: | $  500,000 |

Mendonca

| Lost past earnings: | $    55,240 |

Hagadorn
| Emotional distress: | $  100,000 |

| TOTAL | $3,565,753.00 |

12.     On or about September 20, 2016, the Court awarded the plaintiffs attorney's fees in the total amount of $5,321,077.88.

13.     The total amount that the County became legally obligated to compensate the plaintiffs as a result of the Underlying Lawsuit was $8,886,830.88.

14.     On or about March 31, 2017, after providing Everest with notice and an opportunity to participate and contribute, the County settled the Underlying Lawsuit with the plaintiffs for the total sum of $6,900,000.00.

/ / /

15.     The County incurred the total sum of $1,252,407.85 in attorney's fees and costs in defending against the Underlying Lawsuit.

16.     The total amount of the settlement of the Underlying Lawsuit and the attorney's fees and costs defending it is $8,152,407.85.

## THE EVEREST POLICIES

17.     Everest issued Public Entity Excess Liability Policy number 71P2000030-081, with a Policy Period of July 1, 2008 to July 1, 2009.  That Policy was renewed at Policy numbers 71P2000030-091 and 71P2000030-101, with Policy Periods of July 1, 2009 to July 1, 2010 and July 1, 2010 to July 1, 2011.  The Everest policy provides a total of $10,000,000.00 for any one employment practice liability wrongful act or series of continuous, repeated or related employment practices liability wrongful acts in excess of [the] retained limit [in the amount of $2,000,000.00].  The Everest policies contain the following relevant and applicable provisions:

## DECLARATIONS

**ITEM 3. LIMITS OF INSURANCE**

The Limits of Insurance, subject to all the terms and conditions of this Policy are:
A. Limits of Insurance
. . .
    3. Per "Employment Practice Liability Wrongful Act" Limit

| | |
|---|---|
| $10,000,000 | Any one "employment practice liability wrongful act" or series of continuous, repeated, or related "employment practice liability wrongful acts" in excess of your "retained limit". |

  B.   "Retained Limit"

. . .

| | |
|---|---|
| 2.  $2,000,000 | Any one "employment practice liability wrongful act" or series of continuous, repeated, or related "employment practice liability wrongful acts". |

**SECTION I – COVERAGE**

**A. INSURING AGREEMENTS**

  **3. EMPLOYMENT PRACTICE LIABILITY**

We will pay on your behalf, the "ultimate net loss", in excess of the "retained limit", that the insured becomes legally obligated to compensate others for loss arising out of your "employment practice liability wrongful act" that takes place in the "coverage territory" during the Policy Period.

. . .

**SECTION III. LIMITS OF INSURANCE**

. . .

    2.    The "retained limit" stated in the Declaration applies:

        a.    Only to damages for "occurrence", "wrongful act", losses for "employment practice liability wrongful acts", or losses for "employee benefit wrongful acts" covered under this Policy;

        b.    Separately to each "occurrence", "wrongful act", "employment practice liability wrongful act" or "employee benefit wrongful act" or series of continuous, repeated, or related "occurrences", "wrongful acts", "employment practice liability wrongful acts", or "employee benefit wrongful acts"; and

        . . .

    3.    We will pay any sums covered under this Policy only after your "retained limit" has been exhausted by means of payment for judgements, settlements, defense costs or "covered first-party automobile expense" for "claims" and "suits" subject to Paragraph 2. above. We will then pay damages in excess of your "retained limit" up to our Limits of Insurance.

. . .

    6.    In determining the Limits of Insurance that apply:

. . .

        c.    All "employment practice liability wrongful acts" arising out of continuous, repeated, or related "employment practice liability wrongful act" shall be treated as a single "employment practice liability wrongful act" and Limits of Insurance in effect at the time of the first "employment practice liability wrongful act" shall apply;

. . .

**SECTION V. DEFINITIONS**

H. "Claim(s)" means a demand for money and includes a "suit".

. . .

O. "Employment practice liability wrongful act" means any actual or alleged negligent error or omission resulting in loss to:

    1. A person arising out of any:

        a. Refusal to employ that person;

b. Termination of that person's employment'

c. Employment related practices, policies, acts or omissions, including, but not limited to, coercion, demotion, evaluation, "retaliation", reassignment, discipline, defamation, harassment, failure to promote, humiliation, discrimination directed at that employee;

. . .

EE. "Retained limit" refers to the amount stated in the Declarations. This amount may consist of a self-insured retention, "underlying insurance", or a combination thereof. The "retained limit" will be the sum of all damages in "ultimate net loss" for:

. . .

3. Each such "employment practice liability wrongful act";

. . .

In determining the "retained limit" that applies:

. . .

iii All "employment, practice liability wrongful acts" arising out of continuous, repeated, or related "employment practice liability acts" shall be treated as a single "employment practice liability wrongful act" and the "retained limit" in effect at the time of the first "employment practice liability wrongful act" shall apply.

FF. "Retaliation" means an "employment practice liability wrongful act" of yours relating or alleged to be in response to an employee who has:

1. Notified a superior or proper authority of any aspect of your business operation which is illegal:
2. Attempted or actually exercised any right that such "employee" has under law…
3. Filed a complaint with a governmental authority or a "suit" against you or any other insured in which damages are claimed;
4. Testified against you or any other insured at a legal proceeding; [or]
5. Declined to perform an illegal or unethical act;

. . .

HH. "Suit" means a civil proceeding in which damages because of … "employee practice liability wrongful act" …to which this insurance applied are alleged.

II. "Ultimate net loss" means the total sum, after reduction for recoveries or salvage collectible, actually paid or payable due to a "claim" or "suit" for which you are liable either by a settlement to which we agree or a final judgement, and shall include defense costs.

18.     Pursuant to the policy provisions of the Everest policies, Everest was required to indemnify the County for all sums, the "ultimate net loss," in excess of the Retained Limit, within the limit of Everest's policy arising out of "employment practice liability wrongful acts" during the policy period after exhaustion of the County's Retained Limit.

19.   The Underlying Lawsuit alleged "employment practice liability wrongful acts" within the meaning of Everest's policies, and the settlement paid by the County was for "employment practice liability wrongful acts" within the meaning of Everest's policies.

20.     The total amount of "ultimate net loss" (arising from the settlement of the Underlying Lawsuit and the attorney's fees and costs incurred in defending against the Underlying Lawsuit) is $8,152,407.85.

## EVEREST DENIES COVERAGE

21.     On or about October 6, 2014, the County placed Everest on notice of the Underlying Lawsuit.

22.     On or about March 4, 2016, Everest provided the County with a reservation of rights letter.

23.     On or about July 20, 2016, after judgment was entered on the Underlying Lawsuit, Everest provided a supplemental reservation of rights letter.

24.     On or about August 2, 2016, counsel retained by Everest provided the County a letter on behalf of Everest which denied any coverage obligation in connection with the Underlying Lawsuit and the judgment entered against the County thereon.

25.     On or about October 19, 2016, and on several occasions thereafter, counsel for Everest provided correspondence to the County reaffirming its position to deny all coverage in connection with the Underlying Lawsuit, the judgment entered on the same and any settlement entered into between the County and the plaintiffs in the Underlying Lawsuit.

## COUNT ONE

### (Breach of Contract)

26.     Plaintiff repeats and incorporates by reference the allegations of paragraphs 1-25 above.

27.     Pursuant to the terms of the Everest policies, Everest is obligated to indemnify the County for the "ultimate net loss" in excess of the Retained Limit and within Everest's Limit of Coverage in connection with the settlement and defense of the Underlying Lawsuit.

28.     Everest has failed to indemnify the County for the "ultimate net loss" in connection with the Underlying Lawsuit and has denied coverage to the County with respect to the Underlying Lawsuit.

29.     Everest has breached the terms of its policy by failing to perform its obligation to indemnify the County as set forth hereinabove and by denying coverage to the County with respect to the Underlying Lawsuit.

30.     As a direct result of Everest's breach of its policies, plaintiff has been deprived of the benefits of its insurance coverage, for which it paid substantial premiums, with respect to the sums incurred by plaintiff in connection with the Underlying Lawsuit.

31.     WHEREFORE, plaintiff prays for relief as set forth below.

## COUNT TWO

### (Breach of the Implied Covenant of Good Faith and Fair Dealing)

32.     Plaintiff repeats and incorporates by reference the allegations of paragraphs 1-31 above.

33.     Implied in Everest's policies is a covenant that it will act in good faith and deal fairly with its insureds; that it will do nothing to interfere with its insured's rights to receive the benefits of the policies; that it will not place its own interests before those of its insured; that it will exercise diligence, good faith and fidelity in safeguarding the interests of its insured; that it will deal ethically with its insured and will fairly and adequately inform the insured of the nature and scope of their insurance coverage (hereinafter referred to as ("the implied covenant of good faith and fair dealing").

34.     Everest has breached the implied covenant of good faith and fair dealing by, inter alia:

a.      Refusing to indemnify the County for any sums in connection with the Underlying Lawsuit, without regard to relevant insurance policy language, relevant law and the specific facts of the claim;

b.      Interpreting the terms and conditions of its polices in an unreasonable manner, which is wholly inconsistent with applicable law, solely in an effort to avoid providing the County with the coverage to which it is entitled under Everest's policies;

c.      Refusing to acknowledge coverage, or withdraw or alter Everest's denials of coverage;

d.      Inventing spurious grounds for avoidance of coverage without regard to the pertinent policy language, facts, or law;

e.      Not attempting in good faith to negotiate a prompt, fair, and reasonable settlement within the policy limits;

f.      Forcing the County to file this litigation in order to obtain the rights and benefits to which it is entitled under the policies.

35.     Plaintiff is informed and believes and thereon alleges that Everest is in breach of the implied covenant of good faith and fair dealing, did the things and committed the wrongful acts alleged above, among other things, for the purpose of willfully and consciously withholding from plaintiff the rights and benefits to which it is entitled under the Everest policies and in complete disregard of said rights; in so doing, Everest has placed its own interests above those of plaintiff for the purpose of retaining and using money that should have been spent in connection with the resolution of the Underlying Lawsuit.

36.     Pursuant to *Brandt v. Superior Court,* 37 Cal.3d 813 (1983), plaintiff is entitled to recover all attorney's fees and expenses that it reasonably has incurred and will incur, in its effort to obtain the benefits of insurance that have been, and continue to be, wrongfully and in bad faith withheld by Everest.

37.     The wrongful conduct alleged herein was done with conscious disregard of plaintiff's rights and with the intent to vex, injure or annoy plaintiff, such as to constitute oppression, fraud or malice under California Civil Code §3294, thereby entitling plaintiff to punitive damages in an amount appropriate to punish or set an example of Everest.

38.     WHEREFORE, plaintiff prays for relief as set forth below.

### COUNT THREE

### (Declaratory Relief)

39.     Plaintiff repeats and incorporates by reference the allegations of paragraphs 1-38 above.

40.     Pursuant to the terms of the Everest policies, Everest is obligated to indemnify the County for the "ultimate net loss" above the County's Retained Limit and within Everest's Limit of Coverage with respect to the Underlying Lawsuit.

41.     Everest has failed to indemnify the County for the "ultimate net loss" in connection with the Underlying Lawsuit and has denied coverage to the County for any of the sums incurred by the County in connection with the Underlying Lawsuit.

42.     An actual controversy of a justiciable nature presently exists between plaintiff and Everest concerning the proper interpretation of the policies and the rights and obligations of the parties.  This controversy is of sufficient immediacy to justify the issuance of a declaratory judgment.

43.     WHEREFORE, plaintiff prays for relief as set forth below.

## PRAYER FOR RELIEF

Plaintiff requests that the Court enter judgment as follows:

1.     On the First and Second Counts:

    a.     Compensatory and general damages according to proof;

    b.     Special and incidental damages according to proof;

    c.     Prejudgment interest at the maximum legal rate;

2.     On the Second Count, punitive damages according to proof;

3.     On the Third Count, for a declaration that Everest has a duty to indemnify the County above the County's Retained Limit and within Everest's Limit of Coverage for the sums incurred by the County in connection with the defense, judgment and settlement of the Underlying Lawsuit;

4.     Reasonable attorney's fees;

5.     Costs of suit;

6.     For such other and further relief as the Court deems appropriate.

Dated:  February 11, 2019                    LONGYEAR, O'DEA & LAVRA, LLP


                                             By: /s/ Gregory P. O'Dea                    .
                                                 Gregory P. O'Dea
                                                 Attorney for County of Sacramento