UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| COUNTY OF SACRAMENTO, | No. 2:19-cv-00263-MCE-DB |
|---|---|
| Plaintiff, | |
| v. | **MEMORANDUM AND ORDER** |
| EVEREST NATIONAL INSURANCE COMPANY, | |
| Defendant. | |

Through the present action, Plaintiff County of Sacramento ("Plaintiff") asserts the following causes of action against Defendant Everest National Insurance Company ("Defendant") arising out of Defendant's failure to indemnify Plaintiff in an underlying state court action: (1) Breach of Contract, (2) Breach of the Implied Covenant of Good Faith and Fair Dealing, and (3) Declaratory Relief. Compl., ECF No. 1. Presently before the Court are two motions: (1) Defendant's Motion for Summary Judgment, or alternatively, Partial Summary Judgment, ECF No. 52 ("Def.'s Mot."), and (2) Plaintiff's Motion for Partial Summary Judgment, ECF No. 53 ("Pl.'s Mot."). Both matters have been fully briefed. ECF Nos. 58 ("Def.'s Opp'n"), 60 ("Pl.'s Opp'n"), 61 ("Def.'s Reply"),
///
///

62 ("Pl.'s Reply").  For the reasons set forth below, Defendant's Motion is GRANTED, and Plaintiff's Motion is DENIED.[1]

# BACKGROUND[2]

### A.   The Insurance Policies

Defendant issued three public entity excess liability insurance policies to the named insured Plaintiff (the "Policies").  See generally Exs. 81–83, ECF No. 52-11, at 6–162.  The Policies further define the named insured to include, in part, "'employees' but only for acts within the scope of their employment by [Plaintiff] or while performing duties related to the conduct of the Named Insured."  See, e.g., Ex. 81, id., at 17.

Under the Policies, Defendant agreed to "pay on [Plaintiff's] behalf, the 'ultimate net loss', in excess of the 'retained limit', that the insured becomes legally obligated to compensate others for loss arising out of [Plaintiff's] 'employment practice liability wrongful act' that takes place in the 'coverage territory' during the Policy Period."  See, e.g., id., at 10.  The retained limit is $2 million for "[a]ny one 'employment practice liability wrongful act' or series of continuous, repeated, or related 'employment practice liability wrongful acts.'"  Id. at 8–9.  However, Defendant does not owe a duty to defend until "the limits of . . . [Plaintiff's] self-insured retention of the 'retained limit' [has] been exhausted by payment to a third party of judgments, settlements, or defense costs . . ."  Id. at 11.

///
///
///
///

---

[1] Because oral argument would not have been of material assistance, the Court ordered these matters submitted on the briefs.  E.D. Local Rule 230(g).

[2] Unless otherwise noted, the following undisputed facts are taken from Plaintiff and Defendant's responses to the other's Statements of Undisputed Facts.  ECF Nos. 58-1, 60-1.

### B. The Underlying Hagadorn Action[3]

On November 12, 2010, Annica Hagadorn, Tracie Keillor, Jodi Mendonca, and Dawn Douglas (collectively, "Hagadorn Plaintiffs") sued their employer, the Sacramento County Sheriff's Department ("Sheriff's Department"), in the Superior Court of California, County of Sacramento, in an action entitled Annica Hagadorn et al. v. Sacramento County Sheriff's Department, Case No. 34-2010-00091514 ("Hagadorn Action"). See generally Ex. 10, ECF No. 52-7, at 249–99. The Hagadorn Plaintiffs asserted various causes of action pursuant to California's Fair Employment and Housing Act ("FEHA"). Id. at 249–60.

Defense counsel notified counsel for the Hagadorn Plaintiffs that the County of Sacramento (Plaintiff) was the proper defendant, not the Sheriff's Department.[4] See Ex. 12, id., at 327 ("The [Sheriff's Department] is simply a department within the County structure."). As a result, the Hagadorn Plaintiffs agreed to amend their complaint so long as Plaintiff agreed to "not challenge FEHA statutory jurisdiction, specifically all of the plaintiff's right to sue letters nam[ing] only the Sacramento Sheriff Department as defendant." Ex. 13, id., at 330. On January 13, 2011, the Hagadorn Plaintiffs filed their first amended complaint, naming Plaintiff as the defendant. See generally Ex. 14, id., at 332–84 ("Plaintiffs are, and have been for many years, employed by Defendant

---

[3] Defendant asks the Court to take judicial notice of documents from the underlying Hagadorn Action as well as various Sacramento County documents. ECF No. 52-3 ("RJN"). Plaintiff does not oppose Defendant's request. In reaching its decision, the Court considered Exhibits 10, 14–16, 29–32, 36, 47–51, 60–62, and 64–68, all of which are court documents from the underlying action. Pursuant to Federal Rule of Evidence 201(b), "[t]he court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." A court may take judicial notice of matters of public record. Lee v. City of L.A., 250 F.3d 668, 689 (9th Cir. 2001). Because these court documents are the proper subject of judicial notice, Defendant's RJN is GRANTED as to the aforementioned exhibits. Because the Court did not consider the remaining exhibits, Defendant's RJN is otherwise DENIED. Furthermore, Plaintiff filed objections to portions of Defendant's Exhibit 35 on hearsay grounds. ECF No. 60-3. However, because the Court did not consider Exhibit 35 in reaching its decision, Plaintiff's objections are OVERRULED.

[4] According to Plaintiff, it "was the proper named defendant [] under the 'employer' definition in [California] Government Code § 12926(d) and the Sheriff's Department, being one of 30 plus county departments, was not a legal entity that could be sued." Pl.'s Response Def.'s Statement of Undisputed Facts, ECF No. 60-1 ¶ 22. For purposes of the present Motion, Plaintiff does not dispute that it is "the ultimate employer of all County employees including those in the Sheriff's Department." See Pl.'s Opp'n at 5 n.1.

COUNTY OF SACRAMENTO AT THE SACRAMENTO COUNTY SHERIFF'S DEPARTMENT as Deputies.").

Three years later, on February 4, 2014, the Hagadorn Plaintiffs filed a second amended complaint, but only named the Sheriff's Department as defendant. See generally Ex. 15, id., at 386–447. Plaintiff answered the second amended complaint as "COUNTY OF SACRAMENTO (erroneously sued as SACRAMENTO COUNTY SHERIFF'S DEPARTMENT)." Ex. 16, id., at 449. In any event, the second amended complaint asserted six causes of action pursuant to FEHA, including retaliation in violation of California Government Code § 12940(h) ("§ 12940(h)") on behalf of all Hagadorn Plaintiffs. Ex. 15, id., at 386–401.

Plaintiff subsequently moved for summary judgment against each Hagadorn Plaintiff, and the state court granted summary adjudication as to all causes of action against all plaintiffs except for the retaliation claim pursuant to § 12940(h). See Exs. 29–32, ECF No. 52-8, at 134–326. On March 4, 2016, Defendant sent its first reservation of rights letter to Plaintiff. Ex. 32, ECF No. 53-11, at 108–12.

Between March 28 and May 17, 2016, the Hagadorn Action went to trial on the retaliation claim. See Ex. 36, ECF No. 52-8, at 358–59. The jury was instructed that Plaintiff is a party in the lawsuit, not the Sheriff's Department. Ex. 47, ECF No. 52-9, at 141. Ultimately, the jury returned a verdict in favor of each Hagadorn Plaintiff, finding that they each engaged in a protected activity (i.e., the reporting of what they reasonably believed was preferential treatment or complaining about alleged racial and gender discrimination in the Sheriff's Department), and that such reporting was a substantial motivating reason for removal from their positions (Douglas and Keillor), the initiation of Internal Affairs investigations (Hagadorn and Keillor), and removal from the opportunity to earn overtime pay (Mendonca). See Ex. 48, id., at 160–61 (awarding Douglas $120,000 for emotional distress and mental suffering); Ex. 49, id., at 163–65 (awarding Hagadorn $100,000 for emotional distress and mental suffering); Ex. 50, id., at 167–69 (awarding Keillor $306,591 in past economic loss; $1,416,449 in future economic loss;

$1,000,000 for emotional stress, and $500,000 for physical pain and suffering); Ex. 51, id., at 171–72 (awarding Mendonca $66,240 for past economic loss). On July 20, 2016, Defendant sent Plaintiff a second reservation of rights letter. Ex. 43, ECF No. 53-12, at 2–8.

Following post-trial motions, the state court awarded the Hagadorn Plaintiffs $5,321,071.88 in attorneys' fees; $55,336.33 in costs; and $71,196.58 in additional costs. Ex. 60, ECF No. 52-9, at 234; Ex. 61, ECF No. 52-10, at 7; Ex. 62, id., at 12. In a letter dated August 2, 2016, Defendant refused to indemnify Plaintiff for "any of the damages awarded at trial or the attorneys' fees sought by [the Hagadorn Plaintiffs]" because "the jury verdicts did not result in any liability subject to coverage under the [Policies]." Ex. 84, ECF No. 52-11, at 164–74. Plaintiff appealed all four judgments, and the Hagadorn Plaintiffs cross-appealed, but while those appeals were pending, Plaintiff and the Hagadorn Plaintiffs settled. See Exs. 64–69, ECF No. 52-10, at 25–44 (settlement filed under seal); Ex. 93, ECF No. 52-11, at 327 (stating Plaintiff incurred $1,246,746.37 in attorneys' fees and costs in defending the Hagadorn Action).

## STANDARD

The Federal Rules of Civil Procedure provide for summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). One of the principal purposes of Rule 56 is to dispose of factually unsupported claims or defenses. Celotex, 477 U.S. at 325.

Rule 56 also allows a court to grant summary judgment on part of a claim or defense, known as partial summary judgment. See Fed. R. Civ. P. 56(a) ("A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought."); see also Allstate Ins. Co. v. Madan, 889 F. Supp. 374, 378–79 (C.D. Cal. 1995). The standard that applies to a

motion for partial summary judgment is the same as that which applies to a motion for summary judgment. See Fed. R. Civ. P. 56(a); State of Cal. ex rel. Cal. Dep't of Toxic Substances Control v. Campbell, 138 F.3d 772, 780 (9th Cir. 1998) (applying summary judgment standard to motion for summary adjudication).

In a summary judgment motion, the moving party always bears the initial responsibility of informing the court of the basis for the motion and identifying the portions in the record "which it believes demonstrate the absence of a genuine issue of material fact." Celotex, 477 U.S. at 323. If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586–87 (1986); First Nat'l Bank v. Cities Serv. Co., 391 U.S. 253, 288–89 (1968).

In attempting to establish the existence or non-existence of a genuine factual dispute, the party must support its assertion by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits[,] or declarations . . . or other materials; or showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 251–52 (1986); Owens v. Local No. 169, Assoc. of W. Pulp and Paper Workers, 971 F.2d 347, 355 (9th Cir. 1987). The opposing party must also demonstrate that the dispute about a material fact "is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248. In other words, the judge needs to answer the preliminary question before the evidence is left to the jury of "not whether there is literally no evidence, but whether there is any upon which a jury could properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed." Anderson, 477 U.S. at 251

(quoting Improvement Co. v. Munson, 81 U.S. 442, 448 (1871)) (emphasis in original). As the Supreme Court explained, "[w]hen the moving party has carried its burden under Rule [56(a)], its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586. Therefore, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Id. at 587.

In resolving a summary judgment motion, the evidence of the opposing party is to be believed, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. Anderson, 477 U.S. at 255. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244–45 (E.D. Cal. 1985), aff'd, 810 F.2d 898 (9th Cir. 1987).

## ANALYSIS

### A.     Defendant's Motion for Summary Judgment

#### 1.     Count I:  Breach of Contract

Defendant moves for summary judgment on the ground that California Insurance Code § 533 ("§ 533") bars coverage. Def.'s Mot. at 8. Section 533 states that "[a]n insurer is not liable for a loss caused by the willful act of the insured; but he is not exonerated by the negligence of the insured, or of the insured's agents or others." Cal. Ins. Code § 533. In other words, § 533, "an implied exclusionary clause read into all insurance policies, bars coverage for intentional and willful acts of the insured." Markel Am. Ins. Co. v. G.L. Anderson Ins. Servs., Inc., 715 F. Supp. 2d 1068, 1076 (E.D. Cal. May 25, 2010). "The purpose of the statutory exclusion is to preclude indemnification for conduct that is 'clearly wrongful and necessarily harmful.'" Markel, 715 F. Supp. 2d at 1076 (quoting Mez Indus., Inc. v. Pac. Nat'l Ins. Co., 76 Cal. App. 4th 856, 877 (1999));

7

see also Shell Oil Co. v. Winterthur Swiss Ins. Co., 12 Cal. 4th 715, 739 (1993) ("The statute reflects a fundamental policy of denying coverage for willful wrongs and discouraging willful torts.").

"For purposes of [§] 533, a willful act includes 'an act deliberately done for the express purpose of causing damage or intentionally performed with knowledge that damage is highly probable or substantially certain to result." Axis Reinsurance Co. v. Telekenex, Inc., 913 F. Supp. 2d 793, 806 (N.D. Cal. 2012) (quoting Shell, 12 Cal. App. 4th at 742).  A willful act also includes "an intentional or wrongful act 'in which the harm is inherent in the act itself.'" Axis, 913 F. Supp. 2d at 806 (quoting Mez, 76 Cal. App. 4th at 875–76).

Here, the sole claim for the jury in the Hagadorn Action was the retaliation claim pursuant to § 12940(h), which prohibits "any employer . . . to discharge, expel, or otherwise discriminate against any person because the person has opposed any practices forbidden under [FEHA] or because the person has filed a complaint, testified, or assisted in any proceedings under [FEHA]."[5]  "There is little question that retaliation claims fall within the indemnity prohibition in [§] 533." Valley Imaging P'Ship Med. Grp., L.P. v. RLI Ins. Co., Case No. CV 06-4595 ABC (PLAx), 2007 WL 9734496, at *3 (C.D. Cal. Sept. 14, 2007) ("Like wrongful termination claims, a retaliation claim necessarily entails proof of a 'willful act' under [§] 533]."); see also Markel, 715 F. Supp. 2d at 1077 (stating a "retaliation claim . . . necessarily implicate[s] willful and intentional

///
///
///
///

---

[5] To establish a prima facie case of retaliation under FEHA, a plaintiff must show:  (1) the employee engaged in a protected activity; (2) the employee was subject to an adverse employment action; and (3) the causal link existed between the protected activity and the employer's action. Yanowitz v. L'Oreal USA, Inc., 36 Cal. 4th 1028, 1042 (2005); see also Arcure v. Cal. Dep't of Dev. Servs., Case No. 1:13-cv-00541-MJS (PC), 2016 WL 3940345, at *11 (E.D. Cal. July 20, 2016) ("[T]he causal link under FEHA may be established by showing that the protected activity was a substantial motivating reason for the adverse employment action.") (emphasis in original).

conduct on the part of the insured.").[6]  Plaintiff's argument that the Hagadorn Action did not show that Plaintiff itself engaged in retaliation or inherently harmful conduct runs counter to the jury's verdict.  See Pl.'s Opp'n at 10, 15–17; Exs. 48–51, ECF No. 52-9, at 160–72 (special verdict forms); Armstrong World Indus., Inc. v. Aetna Casualty & Surety Co., 45 Cal. App. 4th 1, 108 (1996) ("[T]he duty to indemnify on a particular claim is determined by the actual basis of liability imposed on the insured.").  Therefore, Plaintiff's conduct falls within the scope of "willful acts" under § 533.

Plaintiff argues that § 533 is nonetheless inapplicable because Plaintiff is only vicariously liable for the acts of employees in the Sheriff's Department.  See Pl.'s Opp'n at 10–20.  Specifically, Plaintiff claims it did not commit any of the willful or inherently harmful acts and that the jury instructions "expressly addressed only the Sheriff's Department, not the 'employer' [Plaintiff]."  See Pl.'s Opp'n at 9–11, 14.  It is true that "[§] 533 does not bar indemnification for a principal where it is held vicariously liable for the willful acts of its agent."  Axis, 913 F. Supp. 2d at 806 (citing Fireman's Fund Ins. Co. v. City of Turlock, 170 Cal. App. 3d 988, 1001 (1985)).  Here, however, it is undisputed that the jury was not instructed on vicarious liability, and there is nothing in the verdict forms to suggest that the jury found Plaintiff vicariously liable.  See Pl.'s Response Def.'s Statement of Undisputed Facts ¶ 137; Exs. 48–51, ECF No. 52-9, at 160–72.

Furthermore, the California Supreme Court has held "that the employer is liable for retaliation under [§ 12940(h)], but nonemployer individuals are not personally liable for their role in that retaliation."  Jones v. Lodge at Torrey Pines P'ship, 42 Cal. 4th 1158, 1173 (2008).  "In the case of an institutional or corporate employer, the institution or

---

[6] Because none of the Hagadorn Plaintiffs were terminated or demoted, but instead subjected to "workplace relocations and initiation of internal investigations, one of which resulted in a disciplinary transfer and personal improvement plan in one plaintiff's case," Plaintiff contends that it did not engage in any activity that would be considered inherently harmful under § 533.  Pl.'s Opp'n at 8–9, 15.  Contrary to Plaintiff's assertion, however, FEHA "protects an employee against unlawful discrimination with respect not only to so-called 'ultimate employment actions' such as termination or demotion, but also the entire spectrum of employment actions that are reasonably likely to adversely and materially affect an employee's job performance or opportunity for advancement in his or her career."  Yanowitz, 36 Cal. 4th at 1053–54; see Coszalter v. City of Salem, 320 F.3d 968, 976–77 (9th Cir. 2009) (listing examples of adverse employment actions to include "the transfer to new duties," "an unwarranted disciplinary investigation," "an unpleasant work assignment," and "an unwarranted disciplinary action").

corporation itself must have taken some official action with respect to the employee, such as hiring, firing, failing to promote, adverse job assignment, significant change in compensation or benefits, or official disciplinary action." Roby v. McKesson Corp., 47 Cal. 4th 686, 706 (2009) (emphasis in original).  Thus, an employer is directly liable for retaliation under FEHA and the jury's finding that Plaintiff violated § 12940(h) means that it found Plaintiff directly, not vicariously, liable for retaliation against the Hagadorn Plaintiffs.

In sum, because Plaintiff committed willful acts and is not vicariously liable, § 533 bars coverage.  As a result, Defendant did not owe a duty to indemnify Plaintiff for the Hagadorn Action and thus did not breach its Policies.  Therefore, Defendant's Motion for Summary Judgment as to Count I is GRANTED.

### 2. Counts II and III: Bad Faith and Declaratory Relief

Because Defendant does not owe a duty to indemnify Plaintiff for the Hagadorn Action, "Defendant has also demonstrated that any refusal by Defendant to cover Plaintiff['s] claims was based upon a 'genuine dispute' between the parties as to coverage of any 'willful' acts in" the Hagadorn Action.  Valley Imaging, 2007 WL 9734496, at *8.  Furthermore, the declaratory relief count is derivative of the breach of contract and bad faith claims.  Accordingly, Defendant's Motion for Summary Judgment is also GRANTED as to Counts II and III.

### B. Plaintiff's Motion for Partial Summary Judgment

Because the Court is granting Defendant's Motion for Summary Judgment in its entirety on the ground that § 533 bars indemnification, Plaintiff's Motion for Partial Summary Judgment is therefore DENIED as moot.

///
///
///
///
///

**CONCLUSION**

For the reasons set forth above, Defendant's Motion for Summary Judgment, ECF No. 52, is GRANTED.  Plaintiff's Motion for Partial Summary Judgment, ECF No. 53, is DENIED as moot.  The Clerk of Court is directed to enter judgment in favor of Defendant and to close the case.

IT IS SO ORDERED.

Dated:  January 19, 2022

_____
MORRISON C. ENGLAND, JR
SENIOR UNITED STATES DISTRICT JUDGE